UNITED STATES of America, Appellee,

v.

Anthony E. URSILLO, Appellant.

No. 675, Docket 85–1311.

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1986.
Decided March 12, 1986.

Cheryl J. Sturm, Philadelphia, Pa., for appellant.

Robert M. Stolz, Brooklyn, N.Y., Asst. U.S. Atty. for E.D.N.Y. (Raymond J. Dearie, U.S. Atty. for E.D.N.Y., Mary McGowan Davis, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, Chief Judge, and FRIENDLY * and WINTER, Circuit Judges.

FEINBERG, Chief Judge:

Anthony Ursillo appeals from an order of the United States District Court for the Eastern District of New York, I. Leo Glasser, J., denying Ursillo's motion for deletion of alleged inaccuracies in a presentence report. Ursillo, who is presently incarcerated, filed this motion over a year after he was sentenced, alleging that the errors in the report have adversely affected his parole status. The district court held that it lacked jurisdiction to reopen the question of the·accuracy of the report, and

that the report was in any event correct. We affirm for the reasons stated below.

## I.

Ursillo pled guilty in April 1984 to one conspiracy count and one substantive count of receiving and transporting goods valued at over $5,000 in violation of 18 U.S.C. §§ 371 and 2315. The conspiracy count charged an extensive conspiracy to burglarize homes throughout the northeast and to transport the stolen property to appellant in Rhode Island. Ursillo's role in the conspiracy was that of a "fence," buying the proceeds from the burglars knowing that the goods were stolen. The conspiracy count listed some 61 actual and attempted burglaries as overt acts committed in furtherance of the conspiracy. The substantive count charged Ursillo with the receipt of the fruits of one of those burglaries. As part of the plea agreement, 22 other substantive counts were dismissed.

In May 1984, Ursillo was sentenced to a four-year prison term, five years' probation and a $20,000 fine. At the sentencing hearing, the judge asked Ursillo's attorney whether he had seen the presentence report, to which counsel replied, "[w]e have, your Honor." The judge then asked whether counsel had had an opportunity to discuss the report with Ursillo. Counsel answered yes. Counsel then raised a number of objections to the report, including that the report gave the erroneous impression that Ursillo had participated directly in the 61 burglaries, and that it characterized Ursillo as an associate of organized crime figures. The judge noted that the 61 burglaries were listed in the indictment, but said he saw nothing in the report that suggested that Ursillo "planned ... or participated in the burglaries themselves beyond fencing the things that were taken from the various persons who were burglarized." Counsel's response was "[t]hen I am satisfied." With regard to Ursillo's associations, the judge ordered one of the statements in the report stricken and stat-

---

* Judge Friendly participated in the oral argument in this case and voted before his death on March 11, 1986 in favor of the disposition reached in this opinion.

ed as to another reference that he was "not considering that." Defense counsel replied, "[a]ll right, I am satisifed." The judge then stated, in compliance with the requirements of Fed.R.Crim.P. 32(c)(3)(D),[1] that he would direct that a transcript of the proceedings accompany the presentence report. After the judge imposed sentence, appellant did not appeal.

In September 1984, shortly after he began serving his prison term, Ursillo filed a timely motion pursuant to Fed.R.Crim.P. 35 for a reduction in his sentence. In his petition, he asserted that he had been rated for parole purposes in the most severe offense category (property over $500,000), as if he had pled guilty to all 24 counts of the indictment rather than to only two. The district judge denied the motion, and Ursillo did not appeal.

Nearly 13 months after his original sentencing, in June 1985, Ursillo filed the present motion, apparently pursuant to Rule 32(c)(3)(D), urging the court to strike several allegedly erroneous items from the presentence report because they were "extremely prejudicial to petitioner in his application for parole consideration," particularly since he had received the severe offense rating referred to above. Now represented by new counsel, Ursillo contended that he had not had sufficient time to review the report prior to sentencing. A supporting affidavit from trial counsel stated that he and Ursillo had seen the report for the first time only one-half hour before sentencing. Ursillo also claimed that he had belatedly discovered important errors in the report, which had only come to his attention as a result of a later trial of one of his co-conspirators. Ursillo asked the judge to strike the challenged portions of the report and forward the redacted version to the Parole Commission, with a copy of the transcript

of the May 1984 sentencing hearing. He advised the court, apparently for the first time, that the transcript had not been attached to the report as the judge had directed at the sentencing hearing.

The judge denied Ursillo's motion, finding that Ursillo had had sufficient time to review the presentence report, that the sentence had not been based on inaccurate information, and that, in any event, Rule 32(c)(3)(D) did not vest the court with jurisdiction to alter a presentence report at such a late date. This appeal followed.

## II.

The courts have long recognized the right of a defendant not to be sentenced on the basis of "material false assumptions as to any facts relevant to sentencing," *United States v. Malcolm,* 432 F.2d 809, 816 (2d Cir.1970); see *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Needles,* 472 F.2d 652, 657 (2d Cir.1973). Toward that end, Rule 32 has been amended several times in recent years to improve the accuracy of presentence reports. See Fed.R.Crim.P. 32, Notes of Advisory Committee on Rules. Under the 1983 amendments, the presentence report must, with certain exceptions not relevant here, be disclosed to the defendant as well as to his counsel a reasonable time before sentencing, even in the absence of a request. Fed.R.Crim.P. 32(c)(3)(A). The sentencing judge must determine whether the defendant and his attorney "have had the opportunity to read and discuss" the report. Fed.R.Crim.P. 32(a)(1)(A). In addition, where the defendant or his counsel allege any factual inaccuracies in the report, the judge must either make a finding concerning the objection or

---

1. Rule 32(c)(3)(D) provides as follows:

(D) If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a

determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

a determination that such a finding is unnecessary because "the matter controverted will not be taken into account in sentencing." Fed.R.Crim.P. 32(c)(3)(D)(i) & (ii). The written record of such findings and determinations is to be appended to any report forwarded to the Parole Commission or the Bureau of Prisons.

Appellant argues to us, as he did to the district court, that amended Rule 32 authorizes a convicted defendant to challenge an alleged inaccuracy in a presentence report at any time after sentencing and gives the district court jurisdiction to consider the matter. The government disputes this view and argues that the district judge correctly determined that he had no jurisdiction to modify the presentence report over a year after he imposed sentence.

Appellant cites no cases to support his interpretation of the rule. Since Rule 32 was amended in 1983, numerous defendants have sought to modify or vacate a sentence based on the failure of the trial court to comply with mandated procedures, including those required by subsection (c)(3)(D). Most of those challenges, however, were raised on direct appeal of a conviction or in a motion under Fed.R.Crim. P. 35.[2] See, e.g., *United States v. Castillo-Roman*, 774 F.2d 1280 (5th Cir.1985); *United States v. Navaro*, 774 F.2d 565 (2d Cir.1985); *United States v. Petitto*, 767 F.2d 607 (9th Cir.1985); *United States v. O'Neill*, 767 F.2d 780, 787 (11th Cir.1985); *United States v. Hill*, 766 F.2d 856 (4th

Cir.), cert. denied, —— U.S. ——, 106 S.Ct. 257, 88 L.Ed.2d 263 (1985). There are a few district court cases in which petitioners have asserted Rule 32 as a basis for jurisdiction, but these too fail to provide authority for Ursillo's claim—either because the court rejected such jurisdiction, see *United States v. Williams*, 618 F.Supp. 1419 (E.D. Va.1985), aff'd, 785 F.2d 306 (4th Cir.1986), or because the Rule 32 challenge was combined with a claim under an independent source of jurisdiction, see *United States v. Sheppard*, 621 F.Supp. 706 (S.D.N.Y.1985) (Rule 32 and ineffective assistance of counsel claim under 28 U.S.C. § 2255). We have found no reported case in which a court held that Rule 32 standing alone furnished the jurisdictional basis for a belated post-sentencing attack on the accuracy of a presentence report.

On the issue of jurisdiction, appellant relies heavily on comments in the Advisory Committee Notes on the 1983 amendments. With regard to Rule 32(a)(1), which the Notes describe as imposing "upon the sentencing court the additional obligation of determining that the defendant and his counsel have had an opportunity to read the presentence investigation report," the Notes stress the defendant's interest in an accurate report. They also discuss at some length the use of the report by parole and prison authorities and its potential effect on the circumstances of a defendant's incarceration.[3]

---

**2.** Rule 35 provides as follows:

(a) *Correction of Sentence.* The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) *Reduction of Sentence.* The court may reduce a sentence within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a

permissible reduction of sentence under this subdivision.

**3.** Quoting Fennell & Hall, Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts, 93 Harv.L.Rev. 1613, 1651 (1980), the Notes state as follows:

The defendant's interest in an accurate and reliable presentence report does not cease with the imposition of sentence. Rather, these interests are implicated at later stages in the correctional process by the continued use of the presentence report as a basic source of information in the handling of the defendant. If the defendant is incarcerated, the presentence report accompanies him to the correctional institution and provides background information for the Bureau of Prisons' classification summary, which, in turn, determines

Appellant argues that the comments of the Advisory Committee show that it envisaged just such an application as he now makes under Rule 32. However, it does not necessarily follow from the comments quoted in the margin that Rule 32 itself creates jurisdiction in the federal district courts to hear and determine at any time an application to correct a presentence report. The 1983 amendments clearly recognized the impact that a presentence report may have on parole determinations and provided a mechanism for informing a parole board of what transpired at the sentencing hearing, including whether the judge determined a disputed issue of fact or made clear that he was not relying on it. But it is not at all clear that the amended rule goes so far as to place an obligation on the sentencing judge to correct, more than a year after sentencing, alleged inaccuracies in the report which the defendant did not raise at the time of sentencing. It may well be that the drafters of the rule meant, except perhaps in the most extraordinary circumstance, to give a defendant one and only one opportunity to make a judicial challenge to a presentence report alone (as distinguished from an attack on the sentence, which is governed by Rule 35). On this view, once that opportunity is past and the remedy of direct appeal is lost, a defendant's remedy is administrative only, for which, as will be seen below, the parole authorities have established procedures.

■ On the facts before us, however, we need not reach this jurisdictional question. Appellant argues to us that the report is incorrect principally because it erroneously links him with the 61 actual or attempted burglaries and overstates the value of the stolen goods. The former contention simply raises in slightly modified form the same issue addressed at the sentencing hearing and in the Rule 35 motion. Even before sentencing, at the plea hearing six weeks earlier, the judge questioned Ursillo directly about the reference to the burglaries in the conspiracy count, and Ursillo nonetheless pled guilty. At the sentencing hearing, the judge once again noted that the 61 burglaries were listed in the conspiracy indictment although the presentence report did not, in the judge's view, suggest that Ursillo "planned ... or participated in the burglaries themselves beyond fencing the things that were taken...." Ursillo's counsel announced that he was satisfied, sentence was then imposed and no appeal was taken. In his Rule 35 motion, Ursillo complained of the impact of the listing of the robberies in the dismissed counts on his parole hearing. The judge denied the motion, and again Ursillo took no appeal. We see no persuasive reason to allow appellant to relitigate the issue now in the district court.

■ With regard to the claim of alleged overvaluation of the stolen goods, this too appears to be a variant of the claims made to the district court in the earlier proceedings. Certainly, the Rule 35 motion complained of the severe offense rating (over $500,000 value) that appellant had received from the parole authorities. Appellant was admittedly in the business of buying and selling stolen goods; surely no one was in a better position than he to assess accurately the value of the goods which he

---

the defendant's classification within the facility, his ability to obtain furloughs, and the choice of treatment programs. *The presentence report also plays a crucial role during parole determination.* (Emphasis supplied). Similarly, in discussing amended Rule 32(c)(3)(D) the Notes state:

As noted above, the Bureau of Prisons and the Parole Commission made substantial use of the presentence investigation report. Under current practice, this can result in reliance upon assertions of fact in the report in the making of critical determinations relating to custody or parole. For example, *it is possi-*

*ble that the Bureau or Commission, in the course of reaching a decision on* such matters as institution assignment, eligibility for programs, or *computation of salient factors, will place great reliance upon factual assertions in the report which are in fact untrue and which remained unchallenged at the time of sentencing because defendant or his counsel deemed the error unimportant in the sentencing context* (e.g., where the sentence was expected to conform to an earlier plea agreement, or where the judge said he would disregard certain controverted matter in setting the sentence). (Emphasis supplied).

concededly had agreed to fence. Yet, Ursillo did not directly raise this issue when he was sentenced or even in his Rule 35 motion, although he and his counsel knew that they could, and indeed did, specifically challenge the report in other respects. Once again, we see no persuasive reason to allow Ursillo to litigate the issue now in the district court. Ursillo now claims, as an explanation for his earlier silence, that he saw the report only one-half hour before sentencing. The district court found this assertion "less than candid," and we see no reason to disagree.[4] Ursillo argues that he should be allowed to press the valuation point now because the judge himself later questioned the reliability of the government's valuation of the stolen goods at the later trial of one of Ursillo's co-conspirators, Michael Filides. But it appears that the judge's statements at Filides' trial, casting doubt on the reliability of certain figures, related solely to the art work fenced by Filides, not to the jewelry, silver and other items fenced by Ursillo.

■ In sum, over one year after sentencing, from which no appeal was taken, appellant sought to require the district court to correct statements in his presentence report that he had either already unsuccessfully challenged in some form, or that he could have raised more specifically at an appropriate time but did not. On this record, we believe that the district court did not err in refusing to grant appellant the relief he sought. With one exception, discussed below, Ursillo received all the procedural protection he is entitled to under the relevant federal rules of criminal procedure. Therefore, we need not decide now whether Rule 32 of itself empowers a federal district court in some circumstances not here present to consider a collateral attack on the accuracy of the presentence report.

### III.

As noted above, there was one provision of Rule 32(c)(3)(D) that was not complied with fully—the requirement that the transcript of the sentencing hearing be appended to the copy of the presentence report forwarded to the Parole Commission or the Bureau of Prisons. The district judge was apprised of this for the first time in appellant's Rule 32 motion, and the probation officer, who acts in this respect as "an arm of the court," see *United States v. Charmer Industries,* 711 F.2d 1164, 1170 (2d Cir. 1983), conceded that he had failed to follow the judge's clear directive at sentencing. The judge has once again ordered the transcript forwarded, and we trust that this mandate will be obeyed.

■ Although it is unlikely, given the content of the transcript, that appellant was harmed by this error, it must not be taken lightly. Amended Rule 32(c)(3)(D) is designed to insure maximum clarity, on the record, of the sentencing judge's treatment of any disputed matters in the presentence report and several circuits have construed the rule quite strictly. See, e.g., *United States v. Petitto,* supra, 767 F.2d at 610–11; *United States v. O'Neill,* supra, 767 F.2d at 787; *United States v. Velasquez,* 748 F.2d 972, 974–75 (5th Cir.1984). Here, however, the district judge satisfied the substantive requirements of the rule by providing appellant at the May 1984 sentencing with an opportunity to review and challenge the report, and by indicating how he intended to handle the disputed material for sentencing purposes. *United States v. Navaro,* supra, 774 F.2d at 566; *United States v. Hill,* supra, 766 F.2d at 858–59. Under the circumstances, the failure to attach the transcript, which is largely a ministerial matter, is not a basis for the relief sought by appellant, i.e., revision of the report. *United States v. Castillo-Roman,* supra, 774 F.2d at 1285; *United States v. Hill,* supra, 766 F.2d at 858–59.

---

**4.** Citing *United States v. Rone,* 743 F.2d 1169, 1173 & n. 2 (7th Cir.1984), Ursillo also argues that the court did not meet its obligation to address each question directly to the defendant, as well as to the attorney. In *Rone,* however, unlike the situation in this case, the court failed to determine whether the defendant had ever reviewed the report, and the defendant denied that he had access to the report before the sentencing hearing.

Appellant makes one final argument that should be addressed. He asserts that Note 2.19–04(c) of the Parole Commission Rules and Procedures Manual indicates that a prisoner will be able to turn to the courts to correct allegedly erroneous portions of a presentence report, and that this provision grants a right without a remedy if the district court's holding on jurisdiction is affirmed. However, the jurisdiction of the district court cannot depend upon what the Parole Commission says in its regulations or notes thereon, since the Commission cannot bestow upon a court jurisdiction which it does not otherwise have. Furthermore, appellant's reference here is only to the "Notes and Procedures" portion of the Parole Commission Manual, in which the Commission provides unofficial commentary on the official Commission Regulations, which are codified at 28 C.F.R. § 2.1–2.63. The introduction to that Manual states that the "Notes and Procedures" are intended for internal guidance only and "do not confer legal rights and are not intended for reliance by private persons." Rules & Procedures Manual at 4.

In addition, it appears that appellant has misconstrued both the Parole Commission Regulations and the "Notes and Procedures." The Commission is expressly required under 28 C.F.R. § 2.19 to resolve factual disputes concerning a prisoner's background by the preponderance of the evidence, and not to rely solely on any particular material, including the presentence report. Note 2.19–04(c), to which appellant refers, states that a prisoner may seek reopening of a parole decision "if the prisoner obtains further significant information, such as a correction from the sentencing court or probation officer." However, a related section of the notes also states that "it may be futile for a prisoner to return to court seeking a modification of his presentence report. Some courts have refused to entertain post-sentencing requests for modification of the presentence report, holding that it is up to the Commission to make its own factual determinations in the parole decision making process." Section 2.19–04(a). Neither the Regula-

tions nor the informal "Notes and Procedures" creates any false expectations. They merely permit new information to be presented to the Commission, should it develop.

The judgment of the district court is affirmed.